LoRING, J.,
delivered tbe opinion of the court.
On tbe evidence tbe court- find: 1st. Tbe petitioner was surveyor general for tbe Territory of Utab from tbe 7th of March, 1855, until tbe 30th day of September, 1857.
2d. That in tbe spring of tbe year 1857, he, with the other officers *220 of the United States in. that Territory, were driven from it by the Mormons, then in open rebellion against the United States. And the petitioner was compelled to leave the furniture, hooks, field-notes, surveyor’s maps, instruments, and effects and papers pertaining to his office, in the charge of W. H. Wilson, a clerk in the office, and in the building in Salt Lake City which the petitioner, as surveyor general, had theretofore occupied.
3d. In the spring of 1857, David A. Burr, the son of the petitioner, was going from Washington to join his father in Salt Lake City, and was charged by the department with boxes of instruments, containing, among other things, the standard yard and stationery for the use of the surveyor general’s office of Utah.
David A. Burr left Washington in March; on reaching the frontier he shipped the articles with which he had been charged by the department, by a freight train, for Salt Lake City, and took conveyance by mail for that city for himself. When about half way there he met the petitioner, and the judges and marshal of the United States court, the Indian agent, and other officers of the United States, flying from the Mormon territory, and he returned with his father to Washington, which was their home. s
The government then sent a military force to quell the rebellion of the Mormons in Utah, and to avoid difficulty from any prejudice that might exist against the former officers of the Territory, the President superseded them all, and among them the petitioner, by new appointments.
On the 13th of July the petitioner, then in Washington, was notified by the department of the appointment of John C. Hayes as his successor to the office of surveyor general of Utah, and he was requested to take immediate steps to secure the delivery of the books, documents, paper, furniture, and articles of every description pertaining to the office of surveyor general of Utah, to Mr. Hayes, with a list of the articles, a copy of which was to be transmitted to the General Land Office.
On the 18th of July the Commissioner of the General Land Office, referring to his directions in his note of the 13th, requested the petitioner to take the necessary steps to carry out this instruction “ as speedily as possible,” and further directed him as follows : “ In case the new surveyor general has not arrived by the 30th September next, your, agent be directed to surrender the office and archives to Governor Gumming, or, in his absence, to the Unted States district *221 attorney, the marshal or deputy marshal, or any other responsible United States officer who may be on the spot.”
To effect the delivery of the property pertaining to his late office, then at Salt Lake City, and on its way there, the petitioner sent his son, David A. Burr, there, who left Washington about the 28th of July, and he overtook a detachment of the United States army at Green river, Utah Territory, in the latter part of September. As General Armstrong, the commanding officer, informed him that the Mormons were then engaged in active hostilities with him, and advised him not to proceed, he remained with the troops until they went into winter quarters at Camp Scott, near Fort Bridger. He then found the freight train with the boxes and articles with which he had been charged by the department, for the use of the surveyor general’s office, and they were here returned to him.
The troops were detained in the camp all winter by the loss of transportation animals from cold and the depth of snow in the mountain passes towards Salt Lake City, which prevented active operations against' the Mormons, who continued to attack outposts and intercept foraging parties, and mails, and supply trains.
In December, the newly appointed judges and marshal of the United States courts in Utah, and Governor Cumming, arrived at the camp, and Mr. David A.- Burr requested the governor to receive the property pertaining to the surveyor general’s office, then in the camp in Mr. Burr’s charge. On January 5th Governor Cumming, in writing, declined to receive the property, and directed Mr. Burr to retain it in his care until they arrived in Salt Lake City.
Mr. Burr remained with the governor until arrival of peace commissioners,' sent by the President to treat with the Mormons in the latter part of May, L85Sand with them, on the 5th day of June, he proceeded to Salt Lake City in advance of the army or any other parties. On the 12th of June, and immediately upon the adjustment by the commissioners of the difficulties between the Mormons and the government, Mr. Burr went to the office formerly occupied by his father, as surveyor general, and found it in the possession of Mr. Kimball, the owner of the building, and he found in it nearly all the office furniture, and all of the original field-notes of the United States surveys made in the Territory, and some of the stationery, of all of which he took possession.
It appears from the evidence in the case, that when the petitioner and other officers were driven from Utah, some Mormons belonging to the Danite band, so called, known as men of violence, entered the *222 office at night and seized Mr. Wilson, the clerk, who had remained in charge of the property in the office, because he was obnoxious to the Mormons, and carried him across the river and threatened his life, with a loaded pistol at his head, to enforce the revocation of letters written from the office for troops. They kept him in confinement till the next evening, when he was liberated, and resumed his duties at his office, and continued them till the 19th of September, 1857; during this time the Mormons visited the building and took from it flour, bacon, and groceries, and some stationery from the office. They then took the key of the office and told Mr. Wilson its business could not go on; and then he left it, and the property in it, consisting, among other things, of the field-notes, maps of surveys, and some- instruments. It also appeared that in the summer of 1857 some of the maps, office papers, and furniture were removed by ex-Governor Young for safe-keeping, and by him restored to Governor Oumming by order of the General Land Office.
On July 5, 1858, Mr. David A. Burr, in pursuance of his instructions, applied to Governor Oumming to receive the property belonging to the surveyor general’s office, then in Mr. Burr’s possession, and a list of which accompanied the written proffer. But Governor Oum-ming then declined to do so because of more pressing matters occupying his attention. Mr. Burr removed the property to a small room for storage, and again applied to Governor Oumming to receive the property, but he declined to do so, saying he was instructed to receipt for the property to Governor Young. After some correspondence Mr. Burr again applied to the governor, who then said he would receive the property at a future day, but that he was expecting the arrival of Mr. Hayes, the newly appointed surveyor general. Aud Governor Oumming, though often requested thereafter, did not receive the property until about the 19th of September, 1859, when he sent to Mr. Burr a written order to deliver the property to Wm. H. Rogers; this was done, Mr. Rogers receipted for the property to Mr. David A. Burr, and the petitioner’s liability for it then ceased.
The petitioner’s official term of service ended on the 30th of September, and his salary has been paid to him up to that date, but the sum due him for salary was withheld from him until he delivered the property as above stated, and exhibited the receipt therefor.
He now claims the amount paid for the services and expenses of his agent, and for the room hired for the storage of the property, the sum of $4,OSO. And we think these are legal and equitable grounds of claim.
*223 That the. petitioner left tbe Mormon country was without fault on Ms part, and is not to be made Ms misfortune, for his right was to be protected there. And if it was.Ms duty to deliver the property pertaining to his office on its determination, it was also the duty of the government to maintain him in the position and ability to do that and to receive it from him; circumstances not to be controlled prevented this. But the evidence shows that in the end of December, 1857, he proffered by his agent the official property then in his control, to Governor Cumming, the person to whom he was directed to deliver it by the department, and that its reception was refused, and he was directed and obliged to retain that property, as well as the other property at Salt Lake City, until the 19th of September, 1859, and during all this time he was held responsible to the government, on his bond, for the property. These services were rendered after his term of office had expired and they were enforced upon him.
And we find that he is entitled to the amount paid to David A. Burr for his services, at the rate of $1,800 per year, from the 30th of December, 1857, to the 19th of September, 1859, $3,100; and for cash paid for rent of the room, hired for the storage of the property in Salt Lake City, $210, making in all, $3,3 L0, for which payment is to be rendered and a certificate issued. ■